# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 13-849V
**Filed: April 25, 2016**

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| KRISTIN COOPER, parent of S.W., a minor * | * | UNPUBLISHED |
| Petitioner, | * | |
| | * | Special Master Gowen |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for petitioner.
Althea W. Davis, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 29, 2013, petitioner filed a petition on behalf of her minor daughter, S.W., pursuant to the National Vaccine Injury Compensation Program. 42 U.S.C. §§ 300aa-1 to -34 (2012). On April 7, 2014, petitioner filed an amended petition alleging that as a result of a Hepatitis B vaccination on November 8, 2010, S.W. suffered anaphylactic shock and epilepsy. Amended Petition at Preamble, docket no. 17, filed Apr. 7, 2014.

On July 11, 2014, respondent filed a Rule 4(c) Report in which she recommended against compensating petitioner. Respondent argued that the medical records did not support petitioner's claim that S.W. suffered anaphylactic shock as defined in the Table, or that the symptoms began within the requisite Table timeframe. *See* Respondent's Report at 12-13, docket no. 26, filed July 11, 2014. Additionally, respondent argued that S.W. did not suffer epilepsy as a result of her

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).

1

Hepatitis B vaccination as she was never diagnosed with seizures or prescribed any anti-epileptic medication. *Id.* at 16-17. Respondent further argued that even if it was found that S.W. suffered epilepsy following her vaccination, petitioner had not shown that the vaccination was "not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Id.* at 17 (citing *Moberly v. Sec'y of HHS*, 592 F.3d 1315, 1322 (Fed. Cir. 2010) and *Althen v. Sec'y of HHS*, 418 F.3d 1274, 1278 (Fed. Cir. 2005)).

On December 29, 2014, petitioner's counsel notified the court in a status report that they did not intend to proceed further with petitioner's case. *See* Status Report at 1, docket no. 33, filed Dec. 29, 2014. Counsel also indicated in the status report that petitioner wished to search for alternate counsel to pursue her claim. *Id.* Petitioner was given ample opportunity to search for alternate counsel or to proceed with her case *pro se* by filing an expert report. Nevertheless, petitioner remained unresponsive to counsel and the undersigned's chambers on how she would like to proceed with her case. After multiple failed attempts by counsel and chambers to reach petitioner, a decision dismissing this case for insufficient proof was issued on October 23, 2015. *See* Decision Dismissing Petition, docket no. 42, filed Oct. 23, 2015.

Thereafter, on February 18, 2016, petitioner's counsel filed an application for attorneys' fees and costs. Counsel requested $30,641.80 for attorneys' fees and $1,457.40 for attorneys' costs. *See* Petitioner's Application for Fees and Costs at 1, docket no. 45, filed Feb. 18, 2016. On March 21, 2016, respondent filed a response in objection to petitioner's application, arguing that there is no reasonable basis for petitioner's claims of anaphylactic shock and epilepsy, as "they lack any factual basis in the medical records provided." Response to Application for Fees and Costs ("Response") at 7, docket no. 47, filed Mar. 21, 2016. Petitioner filed a reply to respondent's objection, arguing, among other things, that "the respondent conflates the standard for reasonable basis and preponderant standard of bringing a successful claim in the Vaccine Program;" and in so doing, "attempts to significantly heighten petitioner's burden of establishing reasonable basis." Petitioner's Reply ("Pet. Reply") at 7, docket no. 49, filed Apr. 5, 2016. In support of their belief that this claim was filed with a reasonable basis, counsel cited to several medical records where there was reference to the minor child's Hepatitis B vaccination and subsequent anaphylactic reaction and epilepsy. *Id.* at 8-12.

On April 5, 2016, petitioner's counsel filed a supplemental application for attorneys' fees, requesting $1,928.00 for replying to respondent's objection.

This matter is now ripe for a decision.

**I. Discussion**

The Vaccine Act permits an award of reasonable attorneys' fees and costs under 42 U.S.C. section 300aa-15(e). When a petitioner has not proven entitlement, a special master "may award an amount of compensation" for reasonable attorneys' fees and costs "if the special master . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1)(B); *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard and petitioners are entitled to a presumption of good faith. *Hamrick v. Sec'y of HHS*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007); *Grice v. Sec'y of HHS*, 36 Fed. Cl. 114, 121 (1996). Conversely, "reasonable basis" is an "objective consideration determined by the totality of the circumstances." *McKellar v. Sec'y of HHS*, 101 Fed. Cl. 297, 303 (2011); *Chuisano v. U.S.*, 116 Fed. Cl. 276, 286 (2014). In determining a reasonable basis, the Court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner v. Sec'y of HHS*, No. 99-544V, 2007 WL 4410030, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) (citing *Di Roma v. Sec'y of HHS*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include the factual basis of the claim, medical support, and the circumstances under which a petition is filed. *Turner*, 2007 WL 4410030, at *6 - *9.

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348. Special masters are permitted to reduce the claimed number of hours to a reasonable number by means of a bulk reduction and are not required to assess fee petitions line-by-line. *Wasson v. Sec'y of HHS*, 24 Cl.Ct. 482, 484 (1991). Just as "[t]rial court courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton v. Sec'y of HHS*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (citing *Farrar v. Sec'y of HHS,* 1992 WL 336502 at * 2 - *3 (Cl. Ct. Spec. Mstr. Nov. 2, 1992)).

    a. **Good Faith and Reasonable Basis for the Claim**

Respondent does not challenge petitioner's good faith in bringing her petition, and the undersigned finds that petitioner indeed brought her claim in good faith. *See* Response at 4. The undersigned also finds that there is a reasonable basis for petitioner's claim based on the medical records.

S.W. received a Hepatitis B vaccination at 10:55 p.m., several hours after birth, on November 8, 2010. Pet. Ex. 2 at 34. Approximately fifteen minutes after her vaccination, petitioner reported to a nurse that S.W.'s face was red and her hands and feet were blue. *Id.* The nurse noted that the child's respirations were easy and unlabored, and that her hands and feet were cyanotic but not any different than an earlier assessment. *Id.* Then several hours later, at 7:00 a.m. on November 9, 2010, the child was removed from her crib as she seemed to be choking. *Id.* at 36. She was more cyanotic and her tone became poor on initial removal from the crib. *Id.* It was also noted that S.W. became apneic. *Id.* She was given stimulation and oxygen in the nursery. *Id.* S.W. had several additional episodes of apnea that day, requiring bag and mask ventilation, a heart apnea monitor, and monitoring with a pulse oximeter. *Id.* at 36-40. The child was transferred to Cabell Huntington Hospital where an EEG revealed "a focal region of cerebral dysfunction." *Id.* at 2; Pet. Ex. 5 at 16-17. S.W. was discharged home on November 18, 2010 with a diagnosis of apnea and respiratory depression. Pet. Ex. 16 at 1-2. At a pediatric appointment on November 30, 2011, a

possible allergy to the Hepatitis B vaccination was recorded and the plan was to "hold Hep B [vaccine] for now!" Pet. Ex. 10 at 20.

On January 4, 2011, S.W.'s primary care physician, Dr. Harold Ayers, noted that the infant was brought to him "because she has been having episodes where she gets a little distant and then her eyes start to go back and forth and then she is fine." Pet. Ex. 10 at 16. He noted that her neurologic exam was normal and that her development was fine. *Id.* His impression was that S.W. may have been having visual problems or seizures, so he referred her to specialists for both. *Id.*

Petitioner's exhibit 9 indicates that at three months old, on March 1, 2011, the minor child was seen by neurologist Dr. Mary Payne for possible seizures. *See* Petitioner's Exhibit ("Pet. Ex.") 9 at 8, filed Jan. 17, 2014. Dr. Payne recorded the child's symptoms and history as follows:

> She at times stares off into space, eyes jerk side to side, she may stiffen, lasts a few seconds. The episodes occur about once a week. When she had the episodes, she was awake. She sleeps well but is active. Her mother recalls the episodes from her discharge from the NICU. She was born at Point Pleasant hospital. She did well after birth. At 14 hours of age, she was given the Hep B vaccine. Immediately afterwards, she became blue, wheezed, had apnea. She was transferred to CHH, where she continued to have apneic episodes, she was discharged home on an apnea monitor . . . . Her EEG in the NICU revealed sharp activity in the right central region, MRI brain normal. A repeat EEG at 3 months of age revealed slowing [in] the left posterior head region.

*Id.* Dr. Payne remarked that if the child's symptoms were indeed seizures, "they are brief" in nature and did not require medication. *Id.*

S.W. was subsequently evaluated by an allergist, Dr. Larry Hagan, on May 23, 2011. Dr. Hagan wrote that it was his "impression that this patient ha[d] severe cardiopulmonary collapse secondary to Hepatitis B vaccine." Pet. Ex. 9 at 3. He further wrote that "this may or may not have been allergic in nature." *Id.* He advised petitioner to "categorically avoid" immunizing S.W. with Hepatitis B vaccine in the future. *Id.* In a letter dated June 13, 2011, Dr. Hagan advised that "due to a severe anaphylaxis reaction of a vaccination given to [S.W.] at birth, it [was] not medically recommended for this child to be placed into a daycare/babysitter until vaccinations have been given and are up to date." Pet. Ex. 5 at 6. Dr. Hagan wrote that S.W. was on a modified vaccination schedule so her immunizations could be given in a safe and controlled environment. *Id.*

A pediatric progress note dated August 3, 2011 noted positive seizure activity and petitioner's request for a second referral due to concerns of seizures. Pet. Ex. 10 at 15. In a referral letter dated August 3, 2011, Dr. Ayers opined that S.W. suffered a "neurologic reaction to a vaccine." Pet. Ex. 10 at 18. He noted that "ever since then," the child suffered staring and tonic-clonic like activity that appeared to be seizures. *Id.* While recognizing that he never witnessed the seizure activity himself, he nevertheless noted that the child's staring and tonic-clonic like activity was noticed by professionals at S.W.'s childhood development program, the Birth to Three Program, and that these persons "told the mom they thought it was a seizure." *Id.* Dr. Ayers further noted the child's "slightly behind" childhood development. *Id.* He requested an opinion on S.W.'s

4

neurologic status and whether she should receive any medication for a possible seizure disorder. *Id.*

Based on a review of these and other records, the undersigned believes there was a reasonable basis to file this petition. Several of S.W.'s treating physicians found significant the temporal association between S.W.'s Hepatitis B vaccination and the onset of apnea, and later symptoms which they suspected to be seizures. Many of her doctors were of the impression that the child suffered some reaction to the Hepatitis B vaccination, whether it be an anaphylactic reaction, a cardiopulmonary collapse, and/or a neurologic reaction. While petitioner was unsuccessful in providing an expert opinion explaining how the vaccination can cause any or all of these conditions to a preponderance of the evidence under the *Althen* criteria, an expert opinion establishing causation is not necessary to establish a reasonable basis for filing a claim. The relevant standard to assess whether a claim is supported by a reasonable basis is whether success is *feasible*, not that success is likely. *See Turner v. Sec'y of HHS*, No. 99-544V, 2007 WL 4410030, at *6-9 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) (citing *Di Roma v. Sec'y of HHS*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)) (emphasis added). Thus, based on the facts as set out in the medical records, the undersigned is persuaded that petitioner and her counsel filed this case in good faith and with a reasonable basis.

### b. Reasonable Attorneys' Fees and Costs

Petitioner requests a total award of attorneys' fees and costs in the amount of $34,027.20 for 163.9 hours of attorney, law clerk, and paralegal time spent on this case. This amount includes petitioner's initial request for interim attorneys' fees and costs filed on May 20, 2015, and supplemental fees incurred as a result of replying to respondent's reasonable basis objection. Respondent states that "if it is determined that there was a reasonable basis for this claim, respondent respectfully defers to the special master's statutory discretion in determining a reasonable fee award for this case. Response at 7.

The subject of appropriate hourly rates for attorneys, law clerks, and paralegals at petitioner's law firm, Conway Homer & Chin-Caplan ("CHC"), was extensively litigated before the undersigned in *McCulloch v. Sec'y of HHS*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Petitioner's requested hourly rates in this case are in accordance with the rates I found to be reasonable in *McCulloch*.

While I am not generally an opponent of reasonable collaboration between lead counsel, associates, paralegals, and law clerks, upon review of the detailed billing records in this case, it seems that this case was passed between multiple attorneys who together expended a significant amount of time on this case, in addition to a very substantial amount of time spent by paralegals and law clerks. I find reasonable the initial associate work in opening the file, reviewing medical records and work on preparation of the detailed amended complaint. I also find reasonable Mr. Homer's time spent in responding to respondent's reasonable basis objection, as well as his relatively nominal charges for file oversight. I will credit some of the paralegal time for obtaining medical records and organizing the file, and do certainly recognize the importance of senior attorney review of the file. However, I find that the ultimate decision of counsel not to proceed

with this case could have been made more expeditiously by having that senior attorney review process completed much sooner.

Accordingly, I will (1) reduce the paralegal time by 56 hours, to a total amount of $3,136.00; (2) reduce law clerk time by 6 hours, to a total amount of $1,430.00, and (3) reduce the total amount billed by attorneys by $6,000.00, which represents a reduction of redundant associate time spent by four different associates. Thus, the total amount awarded for attorneys' fees, including law clerk and paralegal time, is $18,798.20. Petitioner is awarded the full amount for attorneys' costs in the amount of $1,457.40.

With regard to General Order #9, which requires reimbursement of petitioner's out-of-pocket litigation expenses, petitioner's counsel avers the following in an affidavit from Susan Farrell, a paralegal at CHC law firm: Ms. Farrell has "made multiple attempts to obtain a signed Petitioner and Counsel Statement from petitioner," via e-mail (which was returned undeliverable), and a mailed letter with self-addressed stamped envelopes to petitioner's home address and a post office box address. *See* Pet. Ex. 19 at 1-2. Ms. Farrell avers that on January 22, 2016, another paralegal employed by CHC, Patrick Kelly, telephoned petitioner to follow-up on the mailed correspondence, and at which time "petitioner communicated that she had not received the recent correspondence because her mailing address had changed." *Id.* at 2. Petitioner provided Mr. Kelly with a new address. *Id.* "During this call, the petitioner also informed Mr. Kelly that she did not incur any litigation expenses during the processing of her claim." *Id.* Ms. Farrell avers that on January 25, 2016 she mailed another Statement to petitioner at her new address with an enclosed self-addressed stamped envelope, to which petitioner failed to respond. *Id.* Ms. Farrell then contacted petitioner via telephone on February 9, 17, and 24, 2016 to follow-up on the Statement, and petitioner remained unresponsive. *Id.* at 2-3.

The undersigned has reviewed the affidavit submitted by counsel and finds that counsel has complied with the spirit of General Order #9. In light of counsel's representations as an officer of this court, coupled with the efforts to communicate with petitioner, and the fact that petitioner has also been unresponsive to the undersigned's chambers over the course of this litigation, the undersigned is satisfied that petitioner's interests were protected and that counsel complied with General Order #9.

## II.   Conclusion

Based on the foregoing, the undersigned awards attorneys' fees and costs as follows:

> **(1) A lump sum of $20,255.60 in the form of a check payable jointly to petitioner and petitioner's attorney, Ronald C. Homer of Conway Homer & Chin-Caplan, for attorneys' fees and costs pursuant to 42 U.S.C. § 300aa-15(e).**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment forthwith.[2]

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master